WALLACE SHILLITO AND OTHERS, APPELLANTS, *v.* EMMA B. REINEKING, RESPONDENT, IMPLEADED WITH JOHN W. REINEKING.

*Contract — is to be governed by the law of the place of its performance — when the question as to what law is to govern should be submitted to the jury.*

This action was brought upon a promissory note given by the defendants, residents of Indiana, to the plaintiffs, residents of Cincinnati, Ohio. The defendant John being indebted to the plaintiffs it was agreed that a note should be given for the amount due, signed by him and his wife, and that the latter should charge her separate estate with its payment. The note in suit was accordingly given, and a clause so binding the property of the wife inserted. It was made and delivered in Indiana, dated Cincinnati, and made payable at ———. By the laws of Indiana such a note was not, and by those of Cincinnati it was, binding upon the wife.

Upon the trial the plaintiffs' counsel asked to be allowed to go to the jury upon the question as to where the parties intended the contract should be performed, and with reference to what law they contracted.

*Held,* that the court erred in refusing the request and nonsuiting the plaintiffs.

APPEAL from a judgment dismissing the complaint, entered upon the trial of this action at circuit.

*John M. Bowers,* for the appellants.

*John L. Logan,* for the respondent.

BRADY, J.:

This action was brought to recover on a promissory note made by the defendants, who were residents of the State of Indiana. The defendant John W. was indebted to the plaintiffs, who were merchants residing in Cincinnati, Ohio, for an overdue account. Their agent called upon John W. about the indebtedness named and had interviews both with him and his wife, the other defendant. At these interviews she offered to mortgage her property in this State to secure the indebtedness, and both also offered to pay the debt in weekly installments of fifteen dollars. But finally on the 11th of October, 1879, the plaintiffs' agent offered to accept a note from the defendants for the indebtedness, provided Mrs. Reineking would bind her separate estate, to which she agreed, whereupon the note in suit was drawn and is as follows:

" $591.03. CINCINNATI, *October* 11, 1879.

One day after date we, or either of us, promise to pay to the order of John Shillito .& Co. five hundred and ninety-one dollars and three cents, negotiable and payable at——, and I hereby charge my individual property with the payment of this note, value received, without any relief from valuation or appraisement laws, with interest at the rate of eight per cent per annum, after maturity, and attorney's fees.

No. . Due 12–15 October.

EMMA B. REINEKING.
JOHN W. REINEKING."

The note was given to John W. by the plaintiffs' agent, with instructions that his wife must sign it first, and that he must read and explain to her the clause binding her separate estate. It appears from the evidence that he took the note across the room to where she was standing at a kind of writing table, which had on it pens and ink; held the note in his hand and engaged in some conversation with her which the agent did not hear, and then brought the note to the agent signed. The answer of the defendant Emma denied, upon information and belief, every allegation in the complaint; set up a former action against her in the courts of Indiana, and then, upon information and belief, alleged that the debt sought to be charged upon her in this action was one created by John W.

Reineking, her husband, and that she was, at the time mentioned in the complaint, and still is, a married woman, possessed of a separate estate, and as such alleges that she is not responsible for the debts of her husband.

It will have been perceived that the note was dated at Cincinnati and payable at——, thus no place being stated for the payment of the note. Upon the trial, it was admitted by the defendants' counsel that the statutes of Ohio permit a married woman to make a contract in relation to her separate estate, and is the same in that respect as the statute of this State. He moved, however, to dismiss the complaint upon the ground that the note in suit was made and delivered in Indiana, and being payable in Indiana it was a contract of that State in which the common law prevailed, and was therefore void.

The plaintiff then requested to be allowed to go to the jury on the question as to where the parties intended the contract should be performed, and with reference to what law they contracted, which request was denied by the court and the plaintiff duly excepted. Whereupon the court dismissed the complaint, to which the plaintiff excepted.

It is conceded that by the laws of Indiana the note could not be enforced, but by the laws of Ohio it is valid. It will have been perceived that the negotiations which took place between the agent of the plaintiffs and the defendants, to secure the payment of the debt of the defendant John W., were marked by the willingness of the defendant Emma to appropriate her property to accomplish the object in view, and the note contained a statement as follows: "And I hereby charge my individual property with the payment of this note."

There can be no doubt that the defendant knew the obligation which she assumed and the jeopardy in which she placed her individual property by signing the note for her husband's debt, and the fact that the note was dated at Cincinnati, was a circumstance showing that the plaintiffs intended that the contract should be governed by the laws of Ohio, and thus made effective. And it seems to be a necessary legal consequence, from that fact and the other circumstance to which reference has been made, that the plaintiff was entitled at least to have the question submitted as to where the

parties intended the contract should be performed, and in reference to what law they contracted. This question seems to have been recently examined by the Supreme Court of the United States in *Pritchard* v. *Norton* (reported in the Alb. Law Jour., December 16, 1882 [vol. 26], p. 491). The court held there that the question of the validity of a bond, as dependent upon the sufficiency of its consideration, is not a matter of procedure and remedy to be governed by the *lex fori*, but belongs to the substance of the contract, and must be determined by the law of the seat of the obligation, and that in every forum a contract is governed by the law with a view to which it is made, because by the consent of the parties that law becomes a part of their agreement; and it is therefore to be presumed, in the absence of any express declaration or controlling circumstances to the contrary, that the parties had in contemplation a law according to which their contract would be upheld, rather than one by which it would be defeated. It was also said in that case that the law which is to decide upon the nature, interpretation and validity of an engagement, which the parties have either expressly or presumptively incorporated into their contract as constituting its obligation, has never been better described than it was incidentally by Chief Justice MARSHALL in *Wayman* v. *Southard* (10 Wheat., 48), where he defined it as a principle of universal law — "the principle that in every forum a contract is governed by the law with a view to which it was made." And it is shown that this principle has been adopted in other cases, and reference is made to other authorities, elementary and otherwise, showing the existence of this principle as one recognized by the law of contracts.

Upon the authority of that adjudication, therefore, when we have reached the doctrine that a court may look into the surroundings and consider all the facts and circumstances bearing upon the making of a contract, for the purpose of ascertaining the intended place of its performance, and ascertain that the principle just stated is applicable, all affirmative adjudications resting upon the form of the note itself become valueless in explanation of the rule which shall govern in the consideration of the case. The element of intention then becomes paramount, and therefore controlling.

For these reasons it is thought that the court below erred in refusing to submit the case to the jury, as requested by the plaintiffs'

counsel. If the ⋅question had been submitted to them, and they had found that the defendant Emma contracted expressly with reference to the law of Ohio, the verdict would necessarily be upheld. And it may be stated, in conclusion, that if such was not the intention, then the giving of a note was an idle ceremony, by which she incurred no obligation and the plaintiffs received no security.

For these reasons the judgment should be reversed, and a new trial ordered, with costs to abide the event.

DAVIS, P. J., concurred.

DANIELS, J. :

By dating the note at Cincinnati, where the persons to whom it was delivered resided, it must have been intended that the makers should pay the note there, as no other place of payment was designated by the note. The place of performance was the residence of the creditors; and the validity of the agreement depended upon the laws of the State of Ohio. By the laws of that State it was legal and binding, and the plaintiffs should have been allowed to recover upon it. I agree therefore to a reversal of the judgment and another trial of the action.

Judgment reversed, new trial ordered, costs to abide event.